UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RICHARDS' REALTY COMPANY, L.L.C. ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 06-2396** |
| **PARAMOUNT DISASTER RECOVERY, INC. ET AL.** | **SECTION: "S" (2)** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that Paramount Disaster Recovery, Inc.'s motion to dismiss the complaint, pursuant to Rule 12(b)(6) is **DENIED**.  (Document #28.)

**IT IS FURTHER ORDERED** that the motion for partial summary judgment of Richards' Realty Company, L.L.C. and Northshore Apartments, L.L.C. is **GRANTED** on the issue of whether Louisiana law applies to the contract for private adjuster services.  (Document #40.)

### I. BACKGROUND

Richards' Realty Company, L.L.C. (Richards'), d/b/a Meadowbrook Apartments, and Northshore Apartments, L.L.C. (Northshore), d/b/a/ Northshore Villas, are owners of apartment buildings in Slidell, Louisiana, which suffered extensive damage as a result of Hurricane

Katrina.  On September 12, 2005, L. Roger Richards met with Steve Slepevic, the president of Paramount Disaster Recovery, Inc. (Paramount), a California corporation, and entered into a contract to retain the services of Paramount as a public adjuster in the plaintiffs' claim against its insurers.  The contract provided that Paramount would be paid a contingency fee of 20% of any insurance proceeds paid to the plaintiffs, Paramount would bill the insurer directly, and the plaintiffs would have no out-of-pocket costs.

State Farm and Casualty Company (State Farm), which had a $250,000 flood insurance policy, tendered its full policy limits, $50,000 of which was paid to Paramount.   Pacific Insurance Company, Ltd.(Pacific) notified the plaintiffs that it wished to tender $573,262.35 under its policy for wind damages.[1]

When the plaintiffs learned that Paramount had received a percentage of the flood insurance proceeds, they terminated their contract with Paramount because they believed that Paramount had contributed virtually nothing to State Farm's payment of the flood policy limits.  Paramount wrote to Pacific maintaining a claim for a portion of the Pacific proceeds.  Plaintiffs notified Pacific of its termination of Paramount.

The plaintiffs filed a "Complaint for Declaratory Relief and Damages" and an amended complaint against Paramount and Pacific, seeking a judgment declaring the Paramount contract

---

[1] Pacific filed a counterclaim/cross-claim in interpleader against Richards, Northshore, Paramount, Prudential Mortgage Capital Funding, L.L.C. and Fannie Mae.  On June 12, 2006, Pacific deposited $613,617.35 in the registry of the court for payment of the claims to Richards', Northshore, Prudential, Fannie Mae, and Paramount.  The cross-claims against Prudential and Fannie Mae were dismissed by stipulation.  The court has disbursed checks to Richards' for the uncontested portion of the proceeds, but has retained the contested 20%.

null and void because a contingent fee is prohibited under La. Rev. Stat. 22:1476(B).  Plaintiffs allege that Paramount has no right to any proceeds under any other legal theory.  The plaintiffs further allege that Paramount illegally converted the proceeds from the flood insurance policy and knowingly presented contracts containing a statutorily prohibited provision requiring the plaintiffs to pay a contingent fee.[2]  Alternatively, the plaintiffs allege that Paramount was unjustly enriched, in violation of La. Civ. Code art. 2298 *et seq.*

Paramount filed an answer, including affirmative defenses, and a counterclaim.  Paramount alleges that the contract is governed by California law, which does not prohibit contracts between an insured and a public adjuster for payment of a fee contingent upon the amount of the claim paid on behalf of the insured.  Further, Paramount alleges that  La. Rev. Stat 22:1476(B) is unconstitutional under the Equal Protection Clause, the First Amendment and the Contract Clause, and the statute further acts to restrain trade and violates the right to economic liberty.  The counterclaim seeks payment of $114,652.46, which represents 20% of the proceeds from Pacific for wind damage.  Alternatively, Paramount alleges that it is entitled to be compensated for its services based on the equitable doctrine of *quantum meruit*.

Paramount filed a motion to dismiss the complaint for declaratory judgment and damages, pursuant to Federal Rule of Civil Procedure 12(b)(6).  The plaintiffs filed a motion for partial summary judgment.[3]

---

[2]  The court dismissed a claim under Louisiana's Unfair Trade Practices & Consumer Protection Law.  Plaintiffs conceded they are not consumers.

[3]  The plaintiffs withdrew the motion for partial summary judgment on the issue of the constituionality of La. Rev. Stat. 22:1476(B) without prejudice to their right to reurge the

## II. DISCUSSION

### A.  Paramount's  Rule 12(b)(6) motion to dismiss

#### 1. Rule 12(b)(6) standard

Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."   Neitzke v. Williams,  109 S.Ct. 1827, 1832 (1989).  The complaint is liberally construed in favor of the plaintiff, and all facts pleaded in the complaint are taken as true.  See Campbell v. Wells Fargo Bank, 781 F.2d 440, 442 (5th Cir. 1986).  This Court does not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson,  78 S.Ct. 99, 101-02 (1957).

#### 2.  Applicability of La. Rev. Stat. 22:1476[4] to corporations

---

motion.

[4]   La. Rev. Stat. 22:1476 was in force during the relevant period.  It was repealed in 2006 by Act 806.  Section 22:1476 provides:
>    A. As used in this Section, "public adjuster" means an individual, except a duly licensed attorney at law, who, for compensation, acts on behalf of an insured or aides the insured in any manner in negotiating for or effecting the settlement of a claim for loss or damage resulting from an accident or other occurrence covered under an insurance policy that insures against loss or damage to property, or any person who advertises or solicits for employment as an adjuster of such claims.
>    B.  Any contract or arrangement between an insured and a public adjuster which provides for payment of a fee to the public adjuster which is contingent upon, and calculated as a percentage of, the amount of any claim or claims paid to or on behalf of an insured by the insurer shall be against public policy and is null and void.

Act 806 of 2006 enacted La. Rev. Stat 22:1210.103, which clarifies the language as follows:
>    A. A public adjuster may charge the insured a reasonable fee.  A public

The plaintiffs challenge the validity of the contract because La. Rev. Stat. 22:1476 prohibits any person, except a licensed attorney at law, from receiving a contingent fees for public adjusting services in Louisiana.  Paramount contends that the contract is valid because La. Rev. Stat. 22:1476 applies only to natural persons, not corporations.

"There are two kinds of persons:  natural persons and juridical persons." SS v. State Ex Rel. Dep't of Social Serv., 831 So.2d 926, 933 (La. 2002).  "A natural person is a human being.  A juridical person is an entity to which the law attributes personality, such as a corporation or a partnership." Id.  "Although the word 'person' may have different meanings in law, the general rule is that when the word 'person' is used in a statute, the statute applies to corporations as well as to natural persons if such corporations fall within the reason and purpose of the provisions of the statute." Id. at 933-34; see La. Rev. Stat. 22:1210.92(6).

The application of La. Rev. Stat. 22:1476 to business entities falls within the reason and purpose of the statute.  The State has a history of restricting persons, professionals associations, professional corporations, and limited liability companies from encroaching upon the practice of law in representing the interests of another as an advocate.  See La. Rev. Stat. 37:212  and 37:213.  The insurance code creates an exception for private adjusters to assist the insured in negotiating a settlement of a claim under an insurance policy.  However, the contract between an insured and a public adjuster is null and void if it is contingent upon or based on a percentage of

---

adjuster shall not solicit for or enter into any contract or arrangement between an insured and a public adjuster which provides for payment of a fee to the public adjuster which is contingent upon, or calculated as a percentage of, the amount of any claim or claims paid to or on behalf of an insured by the insurer and any such contract shall be against public policy and is null and void.

the amount of the claim.

Because the complaint alleges that Paramount entered a contract to provide services as a public adjuster and agreed upon a contingency fee, the plaintiffs have stated a claim challenging the validity of the contract under La. Rev. Stat. 22:1476.  It does not appear beyond doubt that the plaintiffs can prove no set of facts in support of their claim which would entitle them to relief; therefore, the Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted is denied.

### 3. Conversion, fraud, and unjust enrichment claims

Paramount moves to dismiss the plaintiffs' claim of tortious conversion, fraud, and unjust enrichment.  Paramount argues only that the claims should be dismissed because there is a valid contract between Paramount and the plaintiffs.  Because of the ruling herein that the prohibition of La. Rev. Stat. 22:1476 applies to business entities, Paramount's sole argument is inadequate to provide any basis to warrant dismissal of the plaintiffs' remaining claims under Rule 12(b)(6). The motion to dismiss the claims of tortious conversion, fraud, and unjust enrichment are denied.

## B. Plaintiff's motion for partial summary judgment

### 1. Summary judgment standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. P. 56(c).  If the moving party meets the initial burden of

establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The nonmovant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

### 2. Whether Louisiana law applies to the contract

The plaintiffs contend that Louisiana law, not California law, applies to the contract. The plaintiffs argue that the contract contains no choice of law provision and that the following factors weigh in favor of applying Louisiana law: the insured property is located in Louisiana, the contract was for public adjusting services in Louisiana, and Louisiana has a strong public interest in protecting its citizens from the unauthorized practice of law.

A federal district court exercising diversity jurisdiction must apply the choice of law provision of the forum state to determine which state's substantive laws apply. See Klaxon v. Stentor Elec. Mfg. Co., 61 S.Ct. 1020, 1021 (1941). Article 3537 of the Louisiana Civil Code governs the choice of law in cases involving conventional obligations and provides:

> Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue. That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the

contract; and (3) the policies referred to in Article 3515,[5] as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

The Revision Comments following Article 3537 state:

This Article establishes the general approach for selecting the law applicable to conventional obligations . . . . In essence, this Article applies in the absence of an effective choice of law by the parties.

La. Civ. Code art. 3537 Revision Comments (a) (1991). Revision Comment (c) explains the

relationship between articles 3537 and 3515:

(c) Relation to Article 3515. The first paragraph of this Article enunciates the objective of the choice-of-law process for contract conflicts in language that is purposefully identical to that of the first paragraph of Article 3515. These two Articles and the comments accompanying them are intended to be read together. As in Article 3515, the objective is to identify "the state whose policies would be most seriously impaired," that is, the state that, in light of its connection to the parties and the transaction and its interests implicated in the conflict, would bear the most serious legal, social, economic, and other consequences "if its law were not applied" to the issue at hand. As envisioned by this Article, the search for the applicable law should not be a mechanical, quantitative process, but should be based on an objective and impartial evaluation of the consequences of the choice-of-law decision of each of the involved states with a view towards accommodating their respective interests rather than selfishly promoting the interests of one state at the expense of the others.

The second paragraph of this Article prescribes the process or method for attaining the objective enunciated in the first paragraph in language that is parallel to, though more specific than, the language employed in the second paragraph of Article 3515. Article 3537 adds specificity to the description of this process by: providing an illustrative list of the factual contacts that are usually pertinent in contract conflicts; by adding to the list of "policies mentioned in Article 3515" certain sets of policies that are *ex hypothesi* pertinent in contract conflicts; and by providing that the evaluation of the strength and pertinence of the involved

---

[5] Article 3515 contains the general principles from which the other articles on Conflict of Laws in Book IV are derived.

policies is to be made "in the light of . . . the nature, type, and purpose of the contract."

After evaluating the strength of the policies and the contacts with each state, the court determines that Louisiana's policies would be most seriously impaired if its law were not applied to the contract for private adjuster services between the plaintiffs and Paramount. The parties do not dispute that the contract was entered in California. L. Roger Richards and Mary McLaughlin Richards, the owners of Richards' Realty and Northshore reside in California. While in California, Richards contacted Paramount's office in California, met with Paramount to negotiate the contract, and signed the contract in California. Checks from the insurance company were to be mailed to California, and Richards received the settlement check for the flood insurance policy in California. Paramount inspected the property in Louisiana, but performed most of its services in California. See Affidavit of Matthew Todd, the vice-president and general counsel for Paramount.

However, the object of the contract was the performance of private adjuster services in Louisiana regarding damages caused by a hurricane in Louisiana to property located in Louisiana. Further, in addition to Louisiana's interest in regulating the insurance industry in this State, Louisiana has a strong public policy against private adjusters receiving a contingency fee for their services, rooted in a policy against the unauthorized practice of law. Paramount points to no competing policy in the State of California that would be affected by the choice of Louisiana law in this case.

Accordingly, there are no disputed issues of material fact, and the plaintiffs' are entitled

to judgment as a matter of law, applying Louisiana law to the contract between the plaintiffs and Paramount.

New Orleans, Louisiana, this  30th  day of January, 2007.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**